United States Courts
Southern District of Texas
FILED

*6/13/2025*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

Hongtao Yu,

Plaintiff,

v.

Officer Johnson,

Officer Sapon (Badge No. 8563),

and other unknown officers of the Houston Police Department and/or Houston Fire Department,

Defendants.

Civil Action No. _____

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Pursuant to 42 U.S.C. § 1983)

I. PARTIES

1. Plaintiff Hongtao Yu resides at 8715 Bellaire Blvd, Houston, TX 77036.

2. Defendants are unknown officers and/or employees of the Houston Police Department and Houston Fire Department, acting under color of state law. Their identities will be confirmed through discovery.

II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because all events occurred in Harris County, Texas.

III. FACTUAL BACKGROUND

5. Plaintiff repeatedly contacted 911 between 2023 and 2025 to report targeted harassment, unusual low-frequency sound attacks, and physical alterations to his home.

6. On multiple occasions, responding police officers refused to provide language interpretation despite requests, forcing Plaintiff to speak in English under stress.

7. During one such encounter in 2023, Plaintiff was forcibly taken by officers, handcuffed, and placed in a police vehicle. The accompanying firefighter personnel entered Plaintiff's home and remained inside for an extended period. The police officer, meanwhile, stood outside a neighbor's house with his body camera active.

8. Plaintiff was taken to the hospital and made to wait over ten hours before a doctor arrived. The doctor asked only a few brief questions. When Plaintiff requested a full psychiatric evaluation to prove his mental clarity and support his criminal complaint, the doctor said it would require days of hospitalization. Plaintiff declined due to responsibilities at home.

9. During this event, Plaintiff had no access to electricity or communication tools. The combination of stress, lack of support, and invasive response to his report further worsened his situation.

10. On the night of the incident, after Plaintiff had called 911, a police officer arrived but refused to provide an interpreter despite Plaintiff's repeated and urgent requests. The officer insisted that Plaintiff speak in English, stating that if Plaintiff did not explain "what happened," the officer would leave. The officer manipulated his body-worn camera repeatedly in front of Plaintiff, further escalating tension. Unable to properly communicate and increasingly distressed, Plaintiff went to bed that night without power or lighting at home. In the early hours of the following morning, he was suddenly awakened by loud engine-like roaring outside his home, followed by a clearly audible human voice embedded within low-frequency vibrations. This voice issued specific threats involving Plaintiff's family, pressuring Plaintiff to harm himself. Plaintiff affirms that he was fully conscious, mentally clear, and that the voice was real—not a hallucination. He possesses multi-year recordings of similar audio phenomena and environmental anomalies. Plaintiff respectfully requests that the Court appoint qualified technical experts to examine the evidence and determine the nature and source of these auditory attacks.

11. Plaintiff affirms that he was fully conscious and mentally clear during this incident. He has gathered two years of video and audio recordings showing these directed-sound events and technical anomalies.

12. Evidence of intrusion and loss includes the disappearance of:

- A dismantled circuit board embedded in the wall of an air conditioning room, which contained multiple components including a particularly thick square-shaped chip;

- A funnel-shaped hollow metal pipe removed from a network set-top box purchased through a third party (the pipe resembled a mini sandglass structure and was wrapped in white insulating material);

- Plaintiff's mobile phone, external hard drive, and their data — all of which stored key environmental recordings and video evidence.

All items disappeared while Plaintiff was forcibly removed from his residence and placed under medical observation.

13. The original installation of suspicious wiring and reflective materials in Plaintiff's home, including a wall-embedded circuit board, occurred while a long-term tenant had access to the space. The tenant insisted on occupying that particular room for years and returned even after relocation.

14. Plaintiff also discovered metal mesh installed inside a wall crack—this occurred after he had successfully sealed off an outdoor sound transmission source. The noise reappeared after this mesh was installed, leading him to believe it is part of a renewed technical setup to propagate noise.

15. Plaintiff also visited the FBI Houston office and reported his situation to an officer named "Tim" (Vietnamese ethnicity), offering audio/video evidence. Tim refused to accept any material, suggesting Plaintiff see a doctor instead. Plaintiff now possesses clear evidence that disproves any psychiatric explanation and requests expert evaluation of these materials.

16. Now in possession of extensive documentation, Plaintiff asserts that his condition is not psychiatric but the result of prolonged technical harassment, illegal surveillance, and discriminatory denial of help from police.

17. The refusal of law enforcement to investigate, combined with environmental attacks and invasion of privacy, has caused serious damage to Plaintiff's daily functioning, work, health, and personal safety.

IV. LEGAL CLAIMS

Count 1: Violation of Fourth Amendment

18. Defendants entered Plaintiff's home without warrant, consent, or exigent circumstances.

Count 2: Violation of Fourteenth Amendment – Due Process

19. Defendants denied Plaintiff due process by refusing to receive complaints, provide interpretation, or investigate reported crimes.

Count 3: Americans with Disabilities Act (ADA)

20. Plaintiff's limited English proficiency requires accommodation. Officers' refusal to provide interpretation violated the ADA.

Count 4: Retaliation and Abuse of Power

21. Defendants responded to Plaintiff's repeated complaints by labeling him mentally unstable and removing him from his home, effectively suppressing his right to report crime.

Count 5: Monell Liability – Failure to Train or Supervise

22. The ongoing denial of interpretation, dismissal of reports, and invasion of home without cause show systemic policy failure by the City of Houston and its departments.

V. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Enter judgment against all Defendants;

B. Award $5,000,000 in compensatory damages, subject to expert analysis and judicial determination.

C. Award punitive damages for reckless misconduct and deliberate indifference;

D. Appoint independent technical experts to evaluate Plaintiff's submitted audio, video, structural, and electromagnetic evidence;

E. Order the production and preservation of all police bodycam footage, 911 transcripts, dispatch logs, and relevant public safety records;

F. Issue injunctive relief requiring proper interpretation and lawful complaint intake procedures for all future interactions;

G. Declare that Defendants violated Plaintiff's constitutional and statutory rights;

H. Award attorney's fees and costs under 42 U.S.C. § 1988;

I. If Plaintiff's submitted evidence constitutes grounds for criminal investigation, order appropriate authorities to initiate formal proceedings;

J. Grant any further relief the Court deems just and proper.

VI. JURY DEMAND

Plaintiff does not demand a jury trial at this time, but reserves the right to amend if needed.

Respectfully submitted,

Hongtao Yu

8715 Bellaire Blvd

Houston, TX 77036

Phone: (832) 339-5888

Email: tao19851005@proton.me

Date: 6/11/2025

Signature: *Hongtao Yu*

Hongtao Yu, Plaintiff (Pro Se)